5-11-0287. Council, please. May I please have your support? My name is Bruce Ressore and I represent the estate of Mildred Burns. Mildred Burns filed her claim for death benefits in March 2005. She died in January 2006, leaving her daughter and son as heirs. In September 2009, the arbitrator awarded death benefits. In August of 2010, the Commission affirmed and adopted the award and also provided additional reasoning in support of the decision concerning notice. Then in July of 2011, the Circuit Court reversed the award, stating that the 45-day notice provision of the Workers' Comp'n Act applied to the Occupational Disease Act claim. And it remanded the case to the Commission to enter a decision consistent with the findings and opinion of the dissenting Commissioner, Nancy Lindsay. This is an appeal from the Circuit Court's order. The only task left for the Commission is to enter an order denying the claim as per the Circuit Court's instructions. Therefore, the Circuit Court's order was finally appealed. The primary argument before the Court this morning is a question of law. It concerns whether the notice provision of the OD Act or the notice provision of the Workers' Comp'n Act applies to death claims under the OD Act. So I take it there's no case law authority resolving this issue one way or the other? I guess that's how I look at it. I would say that Gonzales brought forward no case law to support their position. I would say that the entirety of the case law up to now pushes in the direction of Mrs. Burns' statement. There's also an argument as to whether the award by the Commission was against the manifest way of the evidence. I'll address that legal question first by saying that it's been argued better in a brief than I can do standing here at oral argument. But I would just like to make a couple observations. I spent about two minutes on that, a couple minutes on the merits of the case proper, and then a couple minutes on the issue of 1F, which was also brought up. First, it's clear that the legislature wanted to treat the issue of notice for injuries in a different manner than notice for diseases. The notice provisions in the two acts are different. The provision in the Disease Act is clearly more liberal than that in the Workers' Comp'n Act. The question underlying all the arguments on the issue is whether it's reasonable to believe that the legislature, which clearly decided that diseases require a more forgiving notice provision than injury cases, would then purposefully provide that in death cases, the cases involving the ultimate disablement, the notice requirements would swing back to the more strict 45-day limitation of the Worker's Comp'n Act. I don't think they intended to do that, and I don't think they did that. It's important to review the relevant dates in understanding this claim. Mr. Burns left the coal mines in December of 1985. Dr. Tudor examined him in 2000 in connection with a federal black lung claim. He died a year and a half later on June 7, 2002. Mrs. Burns filed her federal black lung death claim approximately 38 days later on July 15, 2002. The estate argues that the 45-day notice requirement of the Worker's Comp'n Act does not apply to cases under the O.D.A. Nonetheless, in this particular case, oddly enough, this is the unposter child for the argument. In this particular case, even if it did, notice was given within the 45 days, and that's very rare. I've never seen it happen before. And as I read the briefs, Consal isn't arguing that it didn't receive notice in 45 days. It's just saying there's no proof of it in the record. In addition, Consal's actions throughout the claim were not consistent with its argument. First, it didn't make this argument until it got to the commission. It waived that argument at the arbitration level. Second, it knew of the federal living minor claim. It had been defending it for two years. It had plenty of time to determine whether there was an occupational disease and how severe it was. And third, when it did find out about the death, instead of filing a motion to dismiss, it fully developed the claim with even more witnesses than the estate had. And it took it through arbitration without producing any evidence of a notice beyond 45 days and without raising its 45-day argument or asking for dismissal. The two purposes of the notice requirement should be considered, to ensure swift medical attention and to allow the employer to investigate the alleged accident. Since there had already been an ongoing federal claim for two years, since Consal already had him examined, and since Mrs. Burns filed a federal widow's claim in less than 45 days from the death, there is no way that Consal's investigation of the disease was hampered or that there was an issue with swift medical attention. In fact, Consal isn't even alleging that the timing of the notice caused any hardship or prejudice, as far as I can see in the briefing. Consal also argues that the 45-day notice is jurisdictional. But the words in the notice provision of the O.D. Act are that the commission, in its discretion, may order that the right to proceed shall be barred. Those are words of limitation, not jurisdiction. I don't think any fair reading of Section 7 of the O.D. Act can interpret it as intending to curtail the benefits of that Act or to make its requirements more strict regarding death claims more than other claims. Sir, doesn't Section 6 of the Diseases Act specifically have its own notice and time limitations? The Diseases Act, as the commission properly found, requires notice as soon as practicable. If the notice is not as soon as practicable, then the company must find that there was undue prejudice because of it. Even if the company does find undue prejudice, the commission, in its discretion, may continue with the case. So is it your position that the Section 6 of the Diseases Act would apply not Section 7 of the Compact, right? That's my conclusion. In addition to the fact that you're saying notice was timely made in any event, correct? That's right. All right. I'm saying it's an attempt at a loophole that just doesn't quite make it. Now, on the issue of notice, the commission got the law right. And here's the answer to your question in the words or the thoughts of the commission. Notice was given when the claim was filed. Consol hadn't shown that it was prejudiced in any way by a delay. It hadn't cited any case law in its argument. And its argument ignores the legislature's clear intent to treat the issue of notice more liberally in disease claims than in injury claims. The commission also got the facts right on the issue of notice. The federal black lung claim was ongoing prior to Mr. Burns' death. Consol's pulmonologist, Dr. Tudor, examined Mr. Burns and performed pulmonary function tests a year and a half prior to his death. And Dr. Noya, a respondent's pathologist, reported findings from the autopsy slides less than a year after the death. Under these facts, as the commission found, there was no prejudice. Now, as to the manifest weight of the decision itself, first the commission found that Mr. Burns had pneumoconiosis and work-related COPD, including emphysema. It also found that his work-related lung diseases were a causative factor in his death. And Consol's arguments at the commission were basically just about the connection of the pneumoconiosis and the death. The diseases of COPD and emphysema were pretty much left out. But a connection of any of the work-related diseases to the death is enough. Also, it's clear that the commission preferred the opinions of the estate's experts. And that's a decision that they get to make. And that decides the case. As to Dr. Perper, they said that his findings were more consistent with the autopsy report than those of Dr. Noya. And as to Dr. Cohen, the commission noted his vast experience in coal mine diseases, gave him credit for not making any money for providing those opinions, and preferred the fact that his opinions were documented by extensive medical literature references. Both Dr. Perper and Dr. Cohen found that the work-related lung diseases were causative factors in the death. And in addition, the death certificate listed pneumonia and pneumoconiosis as the immediate cause of death. The commission gets to weigh these facts and make these calls. And their decisions are all backed up by sufficient evidence in the record. Consol just wants you to re-weigh the evidence and come up with a different conclusion. And the last issue regards timely disablement under Section 1F. And that's a manifest way question also. And the commission had adequate basis for its decision. Consol's own expert, Dr. Westerfield, found pneumoconiosis on a 1986 x-ray. That was within two years of the date of last exposure. Consol's argument is that he didn't read that x-ray until after the 1F period. But the date he read the x-ray isn't what counts. It's what was on that x-ray when it was taken that counts. That proves 1F. And it's important that the arbitrator and the commission recognize that when you have pneumoconiosis, you have an impairment in the function of your lungs, whether it can be measured or not. Normal pulmonary function testing does not rule out damage from lung disease. In addition, Dr. Tudor reported that breathlessness began in 1985. Dr. Sanjabi had a Department of Labor exam and he reported that Mr. Burns had wheezing beginning in 1985 and he had daily productive cough for 15 years. Mr. Burns was having lung problems prior to the time he left mining in 1985 and also prior to his car wreck in 1989 and prior to his heart bypass in 1997. All of this was sufficient evidence to support the commission's decision that the estate met a 1F burden. I ask the court to reverse the circuit court's decision and to reinstate the commission's award of death benefits. Thank you. Thank you, counsel. Counsel, please. May it please the court. Mr. Besor, my name is Cheryl Enterbier. I represent Consolidation Coal Company in this matter. The only issue I'm going to address with this court on appeal is the issue of notice. With regard to the original question asked, Section 6 of the Occupational Disease Act says that notice has to be provided as soon as practicable for disablement. That's what it says. Disablement is also defined by the Occupational Disease Act and does not include death. It's a temporary or permanent impairment in the function of the body or an inability to work. Therefore, the notice statute as it applies under the Occupational Disease Act does not address death. What we have under the Occupational Disease Act is Section 7, which is basically a deference back to the Illinois Workers' Compensation Act. And the last sentence of it says, and for purposes of the disablement, disfigurement, or death of an employee by reason of an occupational disease arising out of and in the course of his employment shall be treated as the happening of an accidental injury. Notice being provided for an accidental injury is provided under Section 6C of the Workers' Compensation Act and requires notice to be provided as soon as practical, but within 45 days. Would you make a second? Is there a case that says 45 days apply to the Occupational Disease Act? No, sir. This is just the statute and what it says. The notice provision under the ODA only... ...has a 45-day case that says the 45-day case applies to occupational diseases. No, sir. All we have is a statute that says notice regarding occupational diseases and only addresses disablement, which is defined and does not include death. What do you make of Section 6 of the Diseases Act that says an application for compensation for death may be filed with the commission within three years after the date of death? That's the statute of limitations for filing the claim. That's not notice. All right. So you have sort of a novel, I think, creative argument based on your interpretation of the section. But right in context, doesn't the section really say that Diseases Act stands for the proposition where the employee is injured, they're entitled to the same compensation and benefits as if somebody accidentally injured under the Compensation Act? I mean, that's what it says in context, doesn't it? Well, it also says subject to the same terms, conditions, and limitations, which puts us under all of the other laws that say when something has to be filed, when notice has to be provided. Forty-five days from when? The date of death, Your Honor. And when was it filed? The case was filed on March 22, 2005. Mr. Burns died on June 7, 2002. So we're nowhere close to that now. Mr. Resort... Well, the question is notice is within... Your argument is that the notice must be provided within 45 days of death to the employer, right? Right. And the arbitrator said notice was timely under the filing of the claim, which doesn't address the 45 days. The commission did address the 45 days and said it didn't apply. The dissenting commissioner said it did based on the statutory language set forth in all three statutes. Mr. Resort made two points that I wanted to address. I mean, this is basically statutory interpretation. That's all it is, and you guys can read the statute as well as I can read it to you, and I'm sure you don't want to hear it. But with that said, notice was an issue in front of the arbitrator. There is no question about that. It's listed on the request for hearing form C-57 in the record. So it's there. The issue I take with regard to Mr. Resort's oral argument is that he stated that Mrs. Burns' federal black loan claim was filed 38 days after the death of Mr. Burns. And there is nothing in the record that says that. Absolutely nothing. And they've asked to take judicial notice of federal black loan decisions that we were going to put in that over their objection we then said fine, we'll withdraw them just to avoid the whole issue. I don't know that those decisions specifically say that's when it was filed either. And the other thing for this court, and this is outside of the record, when she files a claim with the DOL, it's not forwarded to the employer. The district director sends notice of the claim out to the employer in the federal black loan claim. So the fact that he's saying she filed it 38 days later, of which there's nothing in the record, that still doesn't say when Quinsall was provided notice of the claim. And that's the whole problem with this. There is absolutely nothing in this record showing when Quinsall received notice of the claim. Now, the commission had a... We should argue in, though, if it were in the record, then what would your response be? If it was in the record and it showed that notice was provided within 45 days, it would be a moot point. But it's not in the record. Even if it came through the federal process? If the federal process showed that notice was provided to Quinsall within 45 days, then yes, they received notice of the death. What's interesting with the commission's analysis of this is they said we received notice via the IME of Dr. Tudor, which was on October 13, 2000, when Mr. Burns was still alive. Now, I don't know how that would provide us notice of his death. To me, that's, you know, unless he died during the exam, we didn't know he died. And that's what this comes down to. And there is a longer period of time for notice under the Occupational Disease Act. And the reason for that is sometimes it takes these diseases a while to manifest. And we've all been, you know, we've heard the arguments as to why it can be, you know, two years or three years or four years and the case law is full of the decision saying notice is fine. This is death. This is not an occupational disease. This is simply providing notice to the employer of the death of the employee. To still do his findings, is your argument that because there is no specific provision for notice of a death in the Occupational Diseases Act, Section 7 of the Diseases Act would tell us that the provisions of the Workers' Compensation Act apply? Yes, under the last sentence. And it says it should be considered an accidental injury. And then you have to provide notice of the accidental injury under 305-6C within 45 days. And so it is our argument that because the record contains absolutely no evidence of notice being provided within that 45-day period, and you are certainly welcome to ask Mr. Rezor where he came up with the 38 days after the filing, or that it was filed with the federal claim, because it's not in the record. It's our position that notice in this case did not fall within that 45-day period. The issue of prejudice is no longer applicable because prejudice only becomes an issue if it's a bad notice. There are cases out there that basically said if there is no notice provided, then the issue of prejudice does not apply. In this case, there is no evidence of any notice that was provided within that time period. So in essence, you're saying this case stands or falls in our interpretation of the statute? I believe it does, Your Honor. But nevertheless, we could disagree with your interpretation and agree with his or vice versa. You certainly could, Your Honor. But I think the statute backs up what we have argued. Are there any further questions? Thank you. Mr. Rezor, would you like to take up Ms. Enterbias' invitation about notice? In terms of the exhibit, you mean? He says there's a lack of notice anywhere in the record. Oh. Well, the filing of the claims notice, that has always been the standard that we've had to follow. And it was filed in a timely fashion. So that's my answer on this and other claims of notice that I've brought forward. I also would just like to say that that 45-day limit on an injury is not harsh. But on a disease, it is harsh. And I'd also like to say that in the case law that's cited in my brief, it's pretty clear to me that even under the War Compact, they want notice in 45 days of the accident that causes the death, not the death. Now, it may be because it's an accident that the death and the accident at the same time are very close. But I can see the fairness of 45-day notice on an accident because the guy's not going to come to work. The son calls in and says, well, Dad just had this wreck. He's not going to be there next week. Well, 45 days is kind of fair for that. I don't see the same thing when a widow, 20 years after the man's left the mine, he dies. She's in grief for a week or two at least and is doing nothing. And then she's got to figure out, does this have anything to do with the coal mine? In fact, you see in our cases where a man died of a sigmoid volvulus, a ruptured bowel, and that was compensable. You've seen cases where a man died of lung cancer, but the lung cancer wasn't a terminal event. It was pneumonia that caused it. And then you had to establish the fact that the COPD that made him more susceptible to that pneumonia was related to the mining. The causation is a big issue and it takes a long time. So that, I believe, is the reason that the notice provision is different and should be. If there are any further questions, or if there are none, the estate of Mrs. Burns rests. Thank you. The clerk will take the matter under advisement for disposition.